FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

APR 1 9 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| SAFE BED TECHNOLOGIES COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 02C 0097 |
| | ) | |
| KCI USA, INC., LOYOLA UNIVERSITY | ) | Judge Norgle |
| HEALTH SYSTEM, RUSH SYSTEM FOR | ) | Magistrate Judge Ashman |
| HEALTH, SWEDISH COVENANT HOSPITAL | ) | |
| and SHERMAN HOSPITAL | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

APR 1 9 2002

**NOTICE OF FILING OF DEFENDANTS'
CORRECTED MEMORANDUM IN SUPPORT OF THEIR
MOTION TO SEVER AND TRANSFER THIS CASE TO THE
WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION**

On April 19, 2002, the undersigned caused to be filed with the Clerk the attached Corrected

Memorandum in Support of Defendants' Motion to Sever and Transfer this Case to the Western

District of Texas, San Antonio Division (originally filed on February 12, 2002), a copy of which is

hereby served upon you. This Corrected Memorandum reflects, among other things, the withdrawal

of Kinetic Concepts, Inc.'s withdrawal of its Motion to Intervene.

Respectfully submitted,

Raymond P. Niro
Douglas M. Hall
NIRO, SCAVONE, HALLER AND NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
Phone: (312) 236-0733

Attorneys for Kinetic Concepts, Inc.

/9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing **NOTICE OF FILING OF DEFENDANTS' CORRECTED MEMORANDUM IN SUPPORT OF THEIR MOTION TO SEVER AND TRANSFER THIS CASE TO THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION** was served upon the below listed parties by messenger delivery:

Anthony C. Valiulis, #2883007
John H. Ward, #2939924
Mary Katherine Danna, #6244439
MUCH, SHELIST, FERED, DENENBERG
   AMENT & RUBENSTEIN
200 North LaSalle Street, Suite 2100
Chicago, Illinois 60601
(312) 346-3100


James D. Ryndak, #2435942
Mark K. Suri, #6199636
Catherine L. Gemrich, #6224999
RYNDAK & SURI
30 North LaSalle Street, Suite 2630
Chicago, Illinois 60602
(312) 214-7770

**Attorneys for Safe Bed Technologies Company**

4/19/02

**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR 1 9 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| SAFE BED TECHNOLOGIES COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 02C 0097 |
| | ) | |
| KCI USA, INC., LOYOLA UNIVERSITY | ) | Judge Charles R. Norgle |
| HEALTH SYSTEM, RUSH SYSTEM FOR | ) | Magistrate Judge Marvin C. Ashman |
| HEALTH, SWEDISH COVENANT HOSPITAL | ) | |
| and SHERMAN HOSPITAL | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

APR 1 9 2002

## CORRECTED MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND TRANSFER THIS CASE TO THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION AND WITHDRAWAL OF KINETIC CONCEPT, INC.'S MOTION TO INTERVENE

On February 12, 2002, Defendants' filed a Motion and Memorandum in Support of their

Motion to Sever and Transfer this Case to the Western District of Texas, San Antonio Division. The

non-party parent of KCI USA, Inc. ("KCI USA"), Kinetic Concepts, Inc. ("KCI"), also filed a

Motion to Intervene, the supporting Memorandum for which was combined with defendants'

Memorandum seeking to sever and transfer. During preparations for plaintiff's Rule 30(b)(6)

deposition concerning the facts surrounding the Motion to Transfer and supporting materials, it was

discovered that an inaccurate factual representation was inadvertently made in paragraph (5) five

of the Declaration of Will Quirk and in the moving papers. Specifically, it was represented that KCI

at all times designed and manufactured the products that plaintiff has asserted are the subject of this

litigation. The actual situation as presently understood and after further investigation, is that on or

about November 30, 1997, KCI's assets relating to the design and manufacture of substantially all

of its products were transferred into its wholly owned subsidiary, defendant KCI USA (principally

*19*

for accounting and tax purposes). Prior to the transfer, all of KCI's manufacturing and design activities were conducted in the San Antonio area. Prior to November 30, 1997, KCI USA did not manufacture and/or design any products, but "technically" acquired that responsibility from KCI, its parent company, in April 1997. Presently, KCI USA is a wholly owned subsidiary of KCI and remains the legal entity which manufactures, designs and commercializes the TriaDyne products allegedly at issue here. However, as previously represented, all of the manufacturing and designing activities have been and are still being conducted in the San Antonio area. Notwithstanding the foregoing, Defendants' do not believe that the substantive issues contained in its original Motion to Sever and Transfer are affected by this error.

KCI's Motion to Intervene, however, now appears unnecessary and has been withdrawn by KCI. Therefore, Defendants now file Mr. Quirk's Corrected Declaration (which corrects paragraph 5 of his prior Declaration, and also includes changes made necessary because of the withdrawal of KCI's Motion to Intervene and minor revenue calculation adjustments) and a Corrected Memorandum in Support of Defendants' Motion To Sever And Transfer This Case To The Western District of Texas, San Antonio Division, which reflects the aforementioned changes, necessitated as a result of the recently discovered inadvertent error.

## I.   **INTRODUCTION**

Plaintiff Safe Bed Technologies Company ("Safe Bed") is an Illinois corporation whose president is attorney Thomas J. Ring and whose corporate secretary is attorney James Potthast. Messrs. Potthast and Ring are the named alleged inventors and the prosecuting attorneys for the patent-in-suit. Safe Bed, which is nothing but a shell corporation created by Messrs. Potthast and Ring to enforce patents, has the same corporate address as Mr. Ring's law firm in Chicago. In 1995,

2

Mr. Ring, through a different shell company, filed a patent infringement suit in this district against KCI and its distributor of therapeutic beds -- beds which were designed, developed, and manufactured in San Antonio, Texas by KCI. Not surprisingly, that case was transferred to the Western District of Texas, San Antonio Division, by the Honorable George M. Marovich[1]. (See Exhibit A).

Now, some seven years later, Messrs. Potthast and Ring, through a new shell company Safe Bed, have brought this action for patent infringement alleging that therapeutic beds designed, developed, and manufactured in San Antonio, Texas by KCI USA infringe Safe Bed's U.S. Patent No. 4,998,939 (the "patent in suit" or "'939 patent").

The facts supporting transfer of this case to the Western District of Texas, San Antonio Division are equally as compelling today as they were in 1995:

- KCI USA is a Delaware corporation having its principal place of business and corporate headquarters in San Antonio, Texas. KCI USA is a wholly owned subsidiary of KCI, which is a Texas corporation. KCI USA is the corporate entity which designs, manufactures, services and distributes therapeutic beds. All of these beds are designed and manufactured in Texas.

- Virtually all documents relating to the alleged infringement are located in San Antonio, Texas (Exhibit B, Quirk Dec.). Virtually every KCI USA witness that may have potentially relevant information regarding the alleged infringement and associated issues resides in Texas. (Exhibit B, Quirk Dec.). Few, if any, relevant documents are located in Illinois (Exhibit B, Quirk Dec.). All the design and manufacturing operations related to the allegedly infringing beds took place in Texas (Exhibit B, Quirk Dec.). Perhaps most importantly, the designers and developers of the allegedly infringing KCI USA beds all reside in the Western District of Texas (Exhibit B, Quirk Dec.).

---

[1]     KCI ultimately prevailed in the 1995 litigation through a jury verdict of invalidity that was affirmed on appeal.

3

- Illinois bears very little connection with this lawsuit. Moreover, Safe Bed is nothing but a shell company formed by Messrs. Potthast and Ring to enforce patents; thus, plaintiff's choice of forum carries little weight.

- The Defendant Hospitals are merely end-users of an allegedly infringing product manufactured, serviced and distributed by KCI USA. Courts have consistently held that resellers and end-users of allegedly infringing products are only indirectly connected and merely peripheral to a patent infringement claim against the manufacturer and distributor. When jurisdiction in a transferee district is not proper for a defendant who is only indirectly connected or peripheral to the main claims, severance of those claims and transfer of the remaining claims to a more convenient forum is proper.

Safe Bed has tried to manipulate the judicial system by naming KCI USA and four local hospital customers in the lawsuit. Therefore, defendants ask this Court to sever the Defendant Hospitals pursuant to F.R.C.P. 21 (and dismiss these defendants without prejudice, or stay the proceedings against them) and transfer the claims against KCI USA pursuant to 28 U.S.C. § 1404(a) to the Western District of Texas, where the action could and should have been brought in the first instance.

## II.   IT IS IN THE INTERESTS OF JUSTICE TO SEVER AND TRANSFER THIS CASE TO TEXAS

The key factors courts look to in determining whether to sever and transfer a case are all present here: (1) the severed claims against the Defendant Hospitals are peripheral to the remaining claims against KCI USA, (2) adjudication of the remaining claims against KCI USA would potentially dispose of the severed claims against the Defendant Hospitals, and (3) section 1404(a) warrants transfer of the remaining claims. LG Electronics, Inc. v. First International Computer, Inc., 138 F.Supp.2d 574, 583 (D. N.J. 2001), *citing*, Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28 (3d. Cir. 1993); Indianapolis Motor Speedway Corp. v. Polaris Indus., 2000 U.S. Dist. Lexis 8396 (S.D. Ind. June 15, 2000).

## A.   The Defendant Hospitals Should be Severed From the Litigation

### i.   The Claims Against the Defendant Hospitals are Peripheral

Messrs. Potthast and Ring, through their shell company, Safe Bed, have brought suit against local Illinois customers of KCI USA solely in an attempt to manipulate the system and to force KCI USA to litigate this matter in Illinois. F.R.C.P. 21 is in place to prevent just this very practice:

> Without the remedy of severance, courts would be powerless to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of 'accentuating the burdens of trial upon a defendant who otherwise would have been entitled to a section 1404(a) transfer.

LG Electronics, Inc., 138 F.Supp.2d at 583, *quoting*, Mobil Oil Corp. v. W.R. Grace & Co., 334 F.Supp. 117 (S.D. Tex. 1971). Safe Bed's naming of the Defendant Hospitals was a calculated attempt to circumvent a 1404(a) transfer to the Western District of Texas. This fact is undeniable when one considers the 1995 patent infringement lawsuit between RWM (a former Ring shell company) and KCI that was initially filed against KCI and its central distributor in the Northern District of Illinois, and subsequently transferred to the Western District of Texas, San Antonio Division. (Exhibit A).

In patent cases, courts have consistently held that claims against users of an allegedly infringing product are peripheral to claims against the manufacturer and central distributor. In fact, it is often the case that even claims against distributors are considered peripheral. *See:* LG Electronics, Inc., 138 F.Supp.2d at 584 (holding that a patent claim against a reseller is peripheral to a claim against defendant manufacturer central distributor); Corry v. CFM Majestic, Inc., 16 F.Supp. 2d 660 (E.D. Va. 1998) (holding that a defendant distributor was peripheral to the main dispute because it was one of a thousand nationwide distributors and was not involved in

5

manufacturing the allegedly infringing product); Siemens Aktiengesellschaft v. Sonotone Corp., 370 F.Supp 970 (N.D. Ill. 1973) (holding that a distributor of allegedly infringing hearing aids was only peripherally involved in a patent infringement suit because its only involvement was in purchasing and reselling the products, not in manufacturing the product). The Defendant Hospitals do not manufacture, distribute or even resell any of the allegedly infringing products. In fact, they do not even own, but lease them! They are but four of the thousands of users of allegedly infringing therapeutic beds manufactured and distributed by KCI USA. (Exhibit B, Quirk Dec.). The claims against the Defendant Hospitals are therefore peripheral and should be severed from the central claim of patent infringement against KCI USA. The case against the Defendant Hospitals should then be dismissed without prejudice, or, in the alternative, stayed pending the outcome of the transferred case in the Western District of Texas, San Antonio Division.

        ii.    **Adjudication of the Remaining Claims Against KCI USA
Would Dispose of the Severed Claims Against the Defendant Hospitals**

Severance is appropriate if the court's ruling on infringement by KCI USA will *likely* resolve the issue against the Defendant Hospitals as well. Adjudication against KCI USA need not guarantee a resolution of the claims against the Defendant Hospitals; "it is enough that such adjudication potentially could resolve the claims against [the Defendant Hospitals] while allowing [Safe Bed] to obtain the 'substance of the relief' it seeks." Indianapolis Motor Speedway Corp., 2000 U.S. Dist. Lexis 8396 at *10; see also, Corry, 16 F.Supp. 2d 660; Mobile Oil Corp., 334 F.Supp. 117.

Here, however, adjudication of Safe Bed's patent infringement claims against KCI USA will dispose of any claims against the Defendant Hospitals. See: LG Electronics, Inc., 126 F.Supp. 2d

at 422.  The Defendant Hospitals have agreed to be bound by the decision of the transferee court and have been indemnified by KCI and KCI USA (either contractually through a supply agreement, or through correspondence in this litigation).  Several courts have found this to be a persuasive factor in determining if severance will potentially dispose of claims.  See: LG Electronics, Inc., 126 F.Supp. 2d at 422; LG Electronics, Inc., 138 F.Supp. 2d at 584; Corry, 16 F. Supp. 2d at 665, n. 9 (finding that adjudication of claims against principal defendants may well dispose of claims against peripheral defendant where peripheral defendant agreed to be bound by the results of the disposition of the claims against the principal defendants in the transferee court.)  If the transferee court finds that Safe Bed's patent is valid, enforceable and infringed by products manufactured and distributed by KCI USA, and Safe Bed thus obtains a complete recovery against KCI USA, then Safe Bed would not be able to recover additional damages against the Defendant Hospitals.  Id.  Also, as previously stated, the Defendant Hospitals have agreed to be bound by the determination of the transferee court.  If, on the other hand, a court finds that Safe Bed's patent is invalid, unenforceable or not infringed by products manufactured and distributed by KCI USA, then the Defendant Hospitals cannot be found liable for using such products.  Corry, 16 F. Supp. 2d at 665.  In either case, adjudication of Safe Bed's patent infringement claims against KCI USA will dispose of any claims against the Defendant Hospitals.

Therefore, pursuant to F.R.C.P. 21, defendants ask this Court to sever the claims against the Defendant Hospitals, and then dismiss them without prejudice, or, in the alternative, stay the claims against the Defendant Hospitals pending the outcome of the transferred case in the Western District of Texas, San Antonio Division.

7

**B.      28 U.S.C. § 1404(a) Warrants Transfer of the
          Remaining Claims Against KCI USA**

Key to the choice of forum issue are the controlling decisions of this Court.  Numerous

judges of this Court have held that the situs of the alleged infringer's principal place of business is

normally the determinative factor in a motion to transfer under § 1404(a):

> "Intellectual property infringement suits often focus on the activities of the alleged
> infringer, its employees, and its documents; therefore, the location of the infringer's
> principal place of business is often the critical and controlling consideration."

Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd., 807 F. Supp. 470, 474 (N.D. Ill. 1992) (Norgle,

J.) (transferring trademark infringement action);  H.B. Sherman Mnf. Co. v. Rain Bird Nat'l Sales

Corp., 979 F.Supp 627, 630 (N.D. Ill. 1997).  In S.C. Johnson & Son v. Gillette Co., 571 F. Supp.

1185 (N.D. Ill. 1983), another patent infringement case, the court held that "as a general rule, the

preferred forum is that which is the center of the accused activity."  Id. at 1187-88.

One reason for this series of controlling decisions from our district is that litigation of patent

cases in a forum with no real relationship to the dispute unfairly burdens jurors who live there, such

as the people who would have to respond to plaintiff's jury demand (see Complaint, p. 1).  In terms

equally applicable to this lawsuit, one court held that "[t]he burden of jury duty ought not to be

imposed upon the people of a community which has no relationship to the litigation."  Rich Co. v.

Honeywell, Inc., 817 F. Supp. 473, 486-487 (D.N.J. 1993) (citations omitted).

**i.      District Court Dockets**

Further, an important factor in determining the appropriate forum under 1404(a) is the

relative congestion of the dockets of the courts involved.  Coffey v. Van Dorn Iron Works, 796 F.2d

217, 221 (7th Cir. 1986) ("the interest of justice may be served by a transfer to a district where the

8

litigants are more likely to receive a speedy trial"); Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 991 (E.D.N.Y. 1991) (transferring case from New York, where it took 19 months to get to trial, to Florida where average time to get to trial was 11 months). Here, this factor strongly favors transfer to the Western District of Texas where the Court's docket is considerably less congested and a determination regarding the rights with respect to the medical device at issue can be made substantially more quickly.

According to the most recent available data, the Northern District of Illinois has more than twice as many cases pending than the Western District of Texas; and the median time from filing to trial in this District (28 months) is more than double the time in the Western District of Texas (13 months) (Exhibit C, 1999 Federal Court Management Statistics, pp. 85, 101). This 'interests of justice' factor weighs substantially in favor of transferring this case to the Western District of Texas.

ii.     **Center of the Allegedly Infringing Activity Is in Texas**

In addition, the center of the allegedly infringing activity is San Antonio, Texas. The vast majority of the design, marketing or manufacturing of products by KCI USA which allegedly infringe the plaintiff's patent takes place in San Antonio, Texas. Indeed, KCI USA, whose Elmhurst service center forms the basis of plaintiff's assertion of venue here, is headquartered in San Antonio (Exhibit B, Quirk Dec.). Thus, the Western District of Texas has strong ties to this lawsuit as the center of the allegedly infringing activity. The case should be transferred there. S.C. Johnson, 571 F. Supp. at 1187-88; Sub-Micron Systems, Inc. v. Sub-Micron Surfacing, Inc., 1993 U.S. Dist. LEXIS 17628, *28-*30 (N.D. Ill. December 10, 1993)(weighing community interests).

### iii.    Convenience of the Witnesses - - Key Witnesses Are Available Only in Texas

The convenience of the parties is another important factor in deciding to transfer venue. Rose v. Franchetti, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989); Sub-Micron, 1993 U.S. Dist. LEXIS 17628, *23-*24 (transferring case under § 1404(a) to New Jersey based in part on the "often crucial factor" of witness convenience). Here, virtually every significant potential witness is located in the Western District of Texas (Exhibit B, Quirk Dec.). Transfer is, thus, appropriate. See: Rodd v. J.G. Hook, Inc., 534 F. Supp. 237, 238 (S.D.N.Y. 1982) (transferring case to Pennsylvania because, inter alia, New York forum posed a significant inconvenience to important witnesses).

### iv.    The Designers Reside in Texas

The vast majority of KCI USA employees who had primary responsibility for the design of the allegedly infringing beds all reside in San Antonio, Texas, within the Western District of Texas (Exhibit B, Quirk Dec.). Their testimony will, of course, likely be instrumental to this lawsuit and crucial to several issues in this case. It would pose a significant inconvenience to KCI USA, and the employee designers to require them to come to Chicago for trial. Testifying in the Western District of Texas will pose a significantly lesser inconvenience to each of those who ultimately testify. The personal and financial burden and inconvenience imposed on these party witnesses by these proceedings should be given great weight in determining the appropriate forum. Hotel Constructors, Inc. v. Seagrave Corp., 543 F. Supp. 1048, 1051 (N.D. Ill. 1982). The residence of the KCI USA employee designers, thus, weighs strongly in favor of transferring this case to the Western District of Texas.

### v.    Other Material Witnesses Reside In Texas

"It is well settled that the trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured." Hotel Constructors, 543 F. Supp. at 1051; Walter E. Heller & Co. v. James Godbe Co., 601 F. Supp. 319, 322 (D.C. Ill. 1984) (unavailability of key witness at trial required transfer to Texas); Rodd, 534 F. Supp. at 238 (transferring case under § 1404(a) where defendant had principal place of business in Pennsylvania, all relevant documents were kept in Pennsylvania, and the New York forum posed a significant inconvenience to important witnesses). Like substantially all of the employee witnesses, most of the material non-party witnesses which may be called to testify at trial by KCI USA are subject to process only in Texas (Exhibit B, Quirk Dec.). To date, KCI USA has identified fourteen (14) employee witnesses which may be called, and ten (10) non party witnesses that may be called. (Exhibit B, Quirk Dec.). All of these potential witnesses reside in San Antonio, Texas. (Exhibit B, Quirk Dec.). The significance of the testimony of, and inconvenience to, each of these potential witnesses weighs strongly in favor of transferring this case to the Western District of Texas. Hotel Constructors, 543 F. Supp. at 1051.

### vi.    Convenience of the Parties Strongly Favors Texas

The relative convenience of the parties decisively favors transfer. First, it is the relative convenience to the parties that matters - - not to the lawyers. Hernandex, 761 F. Supp. at 988; Standard Office Systems v. Rich Corp., 742 F. Supp. 534, 537 (W.D. Ark. 1990). Plaintiff Safe Bed is a shell company run by two lawyers to enforce patents. The relative convenience or inconvenience of the plaintiff is not given substantial weight. Id.; Paul, 613 F. Supp. at 180; Volk Corp. v. Art-Pak Clip Art Service, 432 F. Supp. 1179, 1182 (S.D.N.Y. 1977).

The vast majority of KCI USA's records, employees and headquarters are in San Antonio,

Texas (Exhibit B, Quirk Dec.). KCI USA is a Delaware corporation having its headquarters and principal place of business in San Antonio, Texas. KCI USA is a wholly-owned subsidiary of KCI and is the corporate entity which services and distributes the therapeutic beds designed and manufactured in Texas (Exhibit B, Quirk Dec.). KCI USA's only connection with the Northern District of Illinois is its service centers in Elmhurst, Illinois and Peoria, Illinois (Exhibit B, Quirk Dec.). KCI USA has very few business records relevant to this lawsuit in Illinois (Exhibit B, Quirk Dec.).

In such situations, this Court has held that the plaintiff's choice of forum is given little weight. Hotel Constructors, 543 F. Supp. at 1050 ("plaintiff's choice of forum has reduced value where the forum lacks any significant contact with the underlying cause of action"); Panasonic Systems, Inc. v. Graphic Computer Service, Inc., 736 F. Supp. 878, 880 (N.D. Ill. 1990) ("where the chosen forum lacks any significant connection to the claim, the plaintiff's choice becomes only one of the many factors the Court may consider"). Thus, the inconvenience of forcing KCI USA to litigate this case in Illinois, versus the inconvenience of attorneys Ring and Potthast and their law firms litigating in Texas, strongly weighs in favor of transferring this case to Texas.

Notably, KCI USA's minimal sales in Illinois (roughly 4% of its total revenues) also support this conclusion (Exhibit B, Quirk Dec.). In transferring a patent infringement case, at least one court found the lack of infringing sales a critical factor. Rich, 817 F. Supp. at 482-83 (footnote and citations omitted). See also, Fairchild Semiconductor Corp. v. Nintendo Co., 810 F. Supp 173, 175 (D.S.C. 1992) (transferring case to Washington where "less than one percent (1%) of nationwide sales of allegedly infringing goods are sold in South Carolina").

On balance, the convenience of the parties strongly favors transferring this case to the

12

Western District of Texas.

### vii.    Discovery Will Also Be Centered in Texas

The residence of defendants' witnesses and the location of its documents are also important because most of the discovery in this action will occur in Texas -- specifically, in the Western District near KCI USA's headquarters. The vast majority of KCI USA's discoverable corporate records are located in San Antonio, Texas, including corporate documents relating to the design, development, marketing, sales and contracts of the allegedly infringing therapeutic beds are located in San Antonio, Texas (Exhibit B, Quirk Dec.). The vast majority of financial documents for KCI USA are located in San Antonio (Exhibit B, Quirk Dec.). San Antonio, Texas is the appropriate venue for this case.

As indicated, the vast majority of potential employee witnesses of KCI USA having knowledge of facts relevant to this lawsuit reside in San Antonio, Texas (Exhibit B, Quirk Dec.). The location where discoverable evidence is centered is an appropriate transference forum, and the absence of such evidence from the forum where the case was filed is a factor favoring transfer. Rich, 817 F. Supp. at 486; Poncy v. Johnson & Johnson, 414 F. Supp. 551, 553-54 (S.D. Fla. 1976); Glamorgan Coal Corp. v. Ratners Group PLC, 854 F. Supp., 436, 438 (W.D. Va. 1993) (wherein the court held that because nearly all of the discovery in this case is likely to take place in New York it is further in the interest of justice for a New York court to supervise the discovery and adjudicate the discovery disputes). Because virtually no discoverable information of KCI USA exists in Illinois, nearly all potential witnesses and deponents reside in the Western District of Texas, no likely potential witnesses reside in Illinois, and the vast majority of discoverable documents of defendants are located in Texas, this case should be transferred to the Western District of Texas.

## III.    CONCLUSION

For all the foregoing reasons, for the convenience of the parties and witnesses, and in the interests of justice, defendants respectfully request that this Court grant their motion to sever the Defendant Hospitals (and dismiss or, at a minimum, stay the case against them) and transfer this case to the Western District of Texas, San Antonio Division.

Respectfully submitted,

Raymond P. Niro
Douglas M. Hall
NIRO, SCAVONE, HALLER AND NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois  60602
Phone: (312) 236-0733

Attorneys for Defendants

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing **CORRECTED MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND TRANSFER THIS CASE TO THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION AND WITHDRAWAL OF KINETIC CONCEPT, INC.'S MOTION TO INTERVENE** was served upon the below listed parties by MESSENGER DELIVERY on this 19th day of April, 2002:

> Anthony C. Valiulis, #2883007
> John H. Ward, #2939924
> Mary Katherine Danna, #6244439
> MUCH, SHELIST, FERED, DENENBERG
>   AMENT & RUBENSTEIN
> 200 North LaSalle Street, Suite 2100
> Chicago, Illinois 60601
> (312) 346-3100

> James D. Ryndak, #2435942
> Mark K. Suri, #6199636
> Catherine L. Gemrich, #6224999
> RYNDAK & SURI
> 30 North LaSalle Street, Suite 2630
> Chicago, Illinois 60602
> (312) 214-7770

> Attorneys for Safe Bed Technologies Company

15

# SEE CASE FILE FOR EXHIBITS