IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAFE BED TECHNOLOGIES COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02C0097 |
| ) | |
| KCI USA, INC., LOYOLA UNIVERSITY ) | Judge Charles R. Norgle |
| HEALTH SYSTEM, RUSH SYSTEM FOR ) | |
| HEALTH, SWEDISH COVENANT HOSPITAL ) | Magistrate Judge Ashman |
| and SHERMAN HOSPITAL ) | |
| ) | |
| Defendants. ) | |

**DOCKETED**
MAY 3 0 2002

## NOTICE OF FILING

**FILED**
MAY 2 8 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

TO: Raymond P. Niro
Robert A. Vitale
Douglas M. Hall
NIRO, SCAVONE, HALLER AND NIRO
181 West Madison Street, Suite 4600
Chicago, IL 60602

PLEASE TAKE NOTICE that on May 28, 2002, I filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **Plaintiff's Memorandum in Opposition to Defendants' Motion to Sever and Transfer,** a copy of which is attached hereto and herewith served upon you.

Respectfully Submitted,

_[signature]_

Attorneys for Plaintiff

| | |
|---|---|
| James D. Ryndak | Anthony C. Valiulis |
| Mark K. Suri | John H. Ward |
| RYNDAK & SURI | MUCH SHELIST FREED DENENBERG |
| 30 N. LaSalle St., Suite 2630 | AMENT & RUBENSTEIN PC |
| Chicago, IL 60602 | 200 N. LaSalle St., Suite 2100 |
| 312-214-7770 | Chicago, IL 60601 |
| | 312-346-3100 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAFE BED TECHNOLOGIES COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KCI USA, INC., LOYOLA UNIVERSITY ) | No. 02C0097 |
| HEALTH SYSTEM, RUSH SYSTEM FOR ) | |
| HEALTH, SWEDISH COVENANT HOSPITAL ) | Judge Charles R. Norgle |
| and SHERMAN HOSPITAL ) | |
| ) | Magistrate Judge Ashman |
| Defendants. ) | |

FILED
MAY 28 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
MAY 30 2002

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO SEVER AND TRANSFER

Safe Bed Technologies Company ("Safe Bed") is a small Illinois corporation owned by two lifelong Illinois residents who have engineering backgrounds, Jim Potthast and Tom Ring. They also happen to be lawyers. Safe Bed is the owner of the patent-in-suit, United States Patent No. 4,998,939, which was invented by those same two Illinois residents. Safe Bed brought this patent infringement suit against hospital bed manufacturer KCI USA, Inc. ("KCI") and four local hospitals. KCI resides in this District, transports into and leases its infringing beds in this District, where one of its five regional headquarters is located. The hospital defendants are lessees of KCI's infringing beds and are located in this District. Safe Bed successfully enforced its '939 patent against another out-of-state manufacturer that also leases its beds in this District, a case Magistrate Judge Ashman was substantively involved in resolving.

Nevertheless, KCI seeks an unwarranted severance of the infringing hospitals and transfer of the case against itself from Safe Bed's chosen home forum to Texas. In support, KCI initially filed a memorandum that it now acknowledges contained false and misleading statements about who makes the infringing beds. Two months later, KCI withdrew that document and refiled it. KCI's Answer still contains such misleading statements.

### The Patent-In-Suit

The '939 patent in one aspect covers a rotational therapy hospital bed with an industry standard safety device that prevents a patient from falling from the bed during use. The claimed

hospital bed of the '939 patent prevents or interrupts rotational therapy when a side rail is down or lowered, protecting the patient. Such beds can rotate patients up to about 40° from side to side, which is medically useful. Rotational therapy apparently speeds patient recovery and reduces bed sores and fluid build-up. KCI and the only other major manufacturer of rotational therapy hospital beds both use the patented invention. The other manufacturer now has a license from Safe Bed.

## Argument

"On a motion for change of venue, the court must consider the plaintiff's choice of forum, the convenience of the parties and witnesses and the interests of justice." *Dark Horse Trading Co. v. The Walt Disney Co.*, No. 98-C5251, 1999 U.S. Dist. LEXIS 7896, at *5 (N.D. Ill. May 14, 1999). (Unpublished cases are provided at Ex. 12.) Movants "have the burden of establishing that the transferee Court is clearly more convenient." *Id.* (emphasis added) "Transfer is inappropriate if it merely transforms an inconvenience for one party into an inconvenience to another party." *Id.* at *6. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998) ("Defendants must prove that litigating in [plaintiff's chosen forum] would pose a 'unique or unusual burden' on their operations."); *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 641 (D. Minn. 1996) ("Transfer under §1404(a) should not be freely granted… party seeking to transfer bears a 'heavy burden'"); *Regent Lighting Corp. v. Galaxy Electrical Mfg., Inc.*, 933 F. Supp. 507, 513 (N.D. N.C. 1996) ("The court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another").

KCI's motion merely shows that its main office is in San Antonio, where it obviously would prefer to litigate, rather than in Safe Bed's chosen home forum of Chicago. KCI fails to meet its burden of showing overall enhancement of convenience. Instead, it impermissibly seeks to shift any inconvenience from itself (a multi-hundred-million dollar entity) to Safe Bed, a far smaller entity. Consequently, KCI's motions to sever and transfer should be denied.

### I. SAFE BED'S CHOICE OF ITS HOME FORUM SHOULD NOT BE DISTURBED

#### A. Plaintiff's Home Forum Choice Should Rarely be Disturbed

There is a "strong presumption" in favor of Safe Bed's choice of its home forum. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995) ("A plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), particularly where it is also the plaintiff's home forum."); *C.R. Bard*, 997 F. Supp. at 562 ("A plaintiff's choice of forum is a 'paramount

2

consideration' when considering a transfer request."); *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (party seeking transfer bears the burden of showing that the "transferee forum is clearly more convenient" than the transferor forum). A "plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor." *Vandeveld*, 877 F. Supp. at 1167 (emphasis added).

There is no doubt that the Northern District of Illinois is Plaintiff Safe Bed's "home forum." Safe Bed is an Illinois corporation. *See* Ex. 1, Decl. of James W. Potthast ("Potthast Decl.") ¶ 3. The principal office of Safe Bed is in Chicago. *Id.* All of Safe Bed's numerous responsive documents are in Chicago. *Id.* Safe Bed's assets are located in Chicago. *Id.* The '939 patent, owned by Safe Bed, is located in Chicago. *Id.* The inventions of the '939 patent were conceived and reduced to practice in this District. *Id.* ¶ 8. Safe Bed is owned by two Northern District shareholders, Messrs. James Potthast and Tom Ring, both of whom are lifelong Illinois residents, born, raised and currently residing in the Northern District. *Id.* ¶ 2, 4, 6, 7. They are the inventors of the '939 patent and assigned all of their rights to Safe Bed. *Id.* ¶ 8, 10. The patent attorneys that prosecuted the '939 patent application reside in Chicago and the documents relating to the patent are located in Chicago. *Id.* ¶ 3, 9. All of the witnesses Safe Bed expects to use to present its case and to refute KCI's defenses are in this District. *Id.* ¶ 14.

KCI attempts to mislead this Court into thinking that the convenience of the lawyer-owners of Safe Bed should not be considered because they are lawyers. Thus, throughout its brief, KCI refers to Safe Bed derisively, repeatedly asserting that Safe Bed is a "shell corporation." KCI's assertions are untrue and improper. While Safe Bed may be a small company, it has rights like any other corporation. The fact that its owners are lawyers does not diminish those rights and is not relevant to KCI's motion. Finally, KCI's case citations on convenience refer to lawyers who are representing the party, not to a party that happens to have lawyer-owners. Safe Bed has retained counsel to represent it and the owners of Safe Bed are not representing Safe Bed in this case. *See* Ex. 1, Potthast Decl. ¶ 5, 7.

> **B.  KCI's Cited Cases Do Not Support Transfer of This Case because those Cases Involve Plaintiffs with No Connection to their Chosen Forum**

This case is not like those cited by KCI, where the plaintiff had no connection to the chosen forum. *See, e.g., S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187 (N.D. Ill. 1983) (Wisconsin-based plaintiff sued Massachusetts-based defendant in Chicago); *H.B.*

3

*Sherman Mfg. Co. v. Rain Bird Nat'l. Sales Corp.*, 979 F. Supp. 627, 629 (N.D. Ill. 1997) (Missouri-based plaintiff sued California-based defendants in Illinois where neither party had offices or facilities in Illinois). Here, the relationship between the patent, the inventors, Plaintiff Safe Bed and the forum is concrete, significant and long standing. Plaintiff's choice of forum should not be disturbed. *See Aptargroup, Inc. v. Summit Packaging Sys., Inc.*, No. 94-C2304, 1994 U.S. Dist. LEXIS 15224, at *9 (N.D. Ill. Oct. 12, 1994) (denying transfer motion, rejecting movant's reliance on *S.C. Johnson*, because plaintiff there had no connection to forum). Here, the connection to this District is very strong, as discussed in detail herein.

### C. KCI's Defenses Implicate the Conduct of Plaintiff and Its Owners, All of Which Are Based in this District

KCI asserts affirmative defenses that put the inventors' actions directly in issue, namely, that the patent is invalid, unenforceable, barred by the equitable doctrines of laches, equitable estoppel, acquiescence and implied license, all of which focus solely on the patent, the Chicago-based inventors and Safe Bed or its predecessor's conduct. *See* Defendants' Affirmative Defenses. KCI's asserted defenses strengthen and reinforce the connection between this forum and this lawsuit. *See Abbott Lab. v. Zenith Lab., Inc.*, 35 U.S.P.Q. 2d (BNA) 1161, No. 94-C6792, 1995 U.S. Dist. LEXIS 3256, at *11 (N.D. Ill. Mar. 15, 1995) ("a counterclaim or defense based on patent invalidity or unenforceability would reinforce the suit's connection with Illinois," denying transfer motion); *Aptargroup*, 1994 U.S. Dist. LEXIS 15224, at *6-7 (plaintiff would have to address issues of validity, unenforceability, laches and ownership by relying on its own documents, denying transfer motion). The events and evidence pertaining to KCI's asserted defenses occurred and are present in this District.

### D. Safe Bed has Voluminous Documents in its Possession, Custody and/or Control in this District

Including documents directly relevant to Safe Bed's affirmative claims, Safe Bed expects that it will produce more than about one hundred thousand pages of documents in its possession, custody and/or control responsive to KCI's likely document requests and to rebut issues raised by KCI, including validity, enforceability, laches and estoppel. *See* Ex. 1, Potthast Decl. ¶ 3, 13. All these documents are located in Chicago. *Id.*

### E. Defendants Committed Infringement in this District and the Accused Hospital Beds are Present Here

Infringement was committed by KCI and the defendant hospitals in this District because KCI's infringing beds are present in, leased in and used by each of the hospital defendants in this District. KCI leases infringing beds all over the United States, but its presence in Illinois (4% of revenue) is twice the average per state. *See* Ex. 2(c), April 18, 2002 Corrected Decl. of William Quirk ¶¶ 11-12. *CoolSavings.com, Inc. v. IQ. Commerce Corp.*, 53 F. Supp. 2d 1000, 1005 (N.D. Ill. 1999) (denying motion to transfer, "events giving rise to this cause of action took place all over the country, wherever [defendant] has allegedly used the patented technology"); *Beam Laser Sys., Inc. v. Cox Communications, Inc.*, 117 F. Supp. 2d 515, 519 (E.D. Va. 2000) (denying motion to transfer, noting that "nationwide character of the alleged infringement does not diminish [plaintiff] Beam's choice of ...its forum...").

In the present case, the accused products are hospital beds that are present in and used in this District, as well as across the United States. These beds are routinely moved from KCI's Elmhurst, Illinois regional headquarters (one of only 5 such facilities) to area hospitals for use. *See* Ex. 3, Quirk Dep. at 90:4-21. This case is not like *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F. Supp. 470, 474 (N.D. Ill. 1992) (J. Norgle), cited by KCI, which involved a trade dress claim on the design of the defendant's retail stores, which stores were in a fixed location far from the original forum. Here, the accused products are hospital beds that are routinely present and available for inspection in this District.

### F. Each Defendant Resides in and has Significant Ties to this District

KCI has conducted significant business operations in this District for many years. It operates a large service facility and regional headquarters in Elmhurst, Illinois, from which it supplies the accused products to its co-defendant hospitals, among others, in this District. Its Elmhurst, Illinois facility is one of only five regional headquarters KCI uses to conduct its United States operations. Ex. 3, Quirk Dep. at 90:4-21. *EazyPower Corp. v. ICC Innovative Concepts Corp.*, No. 98-C3189, 1999 U.S. Dist. LEXIS 1364, at *12 (N.D. Ill. Feb. 4, 1999) (J. Norgle, denying motion to transfer, noting no burden on Connecticut company to travel to Northern District of Illinois where defendant "has a sales representative operating in Illinois"). Here, KCI has significantly more than a mere sales representative in this District, namely, its regional headquarters. In addition, KCI derives a significant portion of its revenues from this

District. *See* Ex. 2(c), Corrected Quirk Decl. ¶¶ 11-12. *See Aptargroup,* 1994 U.S. Dist. LEXIS 15224, at *4 (finding in patent case annual alleged infringing sales amount of $1.5 million to be significant; denying transfer motion).

The four hospital defendants are users of the accused products and have business operations located in this District, not Texas. Each uses the accused beds in this District. Safe Bed expects to present live testimony from them at trial on commercial success and the benefits and value that the patented beds provide in ensuring safe use by their patients. *Rockwell Int'l Corp. v. Eltra Corp.*, 538 F. Supp. 700, 703 (N.D. Ill. 1982) (live testimony of witnesses is far superior to a paper record represented by depositions, including videotaped depositions); *Central States v. Salasnek Fisheries, Inc.*, 977 F. Supp. 888, 891 (N.D. Ill. 1997) ("live testimony is preferred over other alternatives whenever feasible"). This important evidence pertains to validity and damages, which KCI disputes.

### G. KCI Seeks to Establish an Improper Rule, Contrary to the Patent Venue Statute, that Venue in Patent Cases Lies Only in Defendant's Home District

KCI seeks to establish a rule that the forum in patent infringement suits must be defendant's principal place of business. Such a rule is contrary to the patent venue statute. *See* 28 U.S.C. § 1400(b). Section 1400(b) fixes venue anywhere the defendant does business. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990) ("venue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced.") Other patent infringement defendants have argued for what KCI seeks. Those arguments have been strongly rejected by the courts. *See, e.g., Aptargroup,* 1994 U.S. Dist. LEXIS 15224, at *9 (rejecting defendant's attempt "to establish a rule that the forum in patent infringement cases should always be the defendant's principal place of business"); *Behring Diagnostics GmbH v. Biosite Diagnostics, Inc.*, No. 97-501MMS, 1998 U.S. Dist. LEXIS 531, at *20-21 (D. Del. Jan. 6, 1998) ("the dispute over the [patent-in-suit] can hardly be described as a local ... controversy, or implicating public policies unique to [the forum of defendant's principal place of business]" because the allegedly infringing product was sold internationally and generated millions of dollars in revenue); *see also VE Holding Corp.*, 917 F. 2d at 1580 (A plaintiff patent owner is not limited to bringing a lawsuit in the forum where the defendant's principal place of business resides or where the defendant has a place of business and has committed acts of infringement).

6

## II. THE CONVENIENCE OF THE PARTIES FACTORS REQUIRE THAT THE CASE BE KEPT HERE

### A. The Relative Financial Strength of the Parties and General Convenience Favors Chicago

Safe Bed is a small company, owned by two individuals, whose principal asset is a patent on their invention. KCI is a multi-national corporation with over $350 million per year in revenue and nearly 1,300 employees. *See* Ex. 4 (KCI SEC filing). It simply would not be burdensome for KCI to participate in Chicago, close to its regional headquarters, and to have its witnesses travel to Chicago to testify at trial. *Ade Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001) (denying motion to transfer, noting that because of movant's large size and status as an enterprise engaged in business throughout the United States, the time its personnel may be away from the office testifying at trial is not burdensome).

On the other hand, it would be very burdensome on Safe Bed to have its employees travel to Texas for a trial or any other evidentiary hearing that may come up. *See* Ex. 1, Potthast Decl. ¶ 12. The relative financial strength of each of the parties is an important factor in deciding a transfer motion. A small plaintiff/strong defendant favors maintaining the case in plaintiff's home forum. *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000); *SRAM Corp. v. Sunrace Roots Enter. Co., Ltd.*, 953 F. Supp. 257, 260 (N.D. Ill. 1997). The likelihood that small patent owners such as Safe Bed would be able or even willing to assert their patent rights against large defendants such as KCI would be greatly reduced if each plaintiff had to prosecute the suit in the location most convenient for the defendants and their witnesses.

### B. General Convenience and Expense to the Parties Favors Chicago

Here, significant discovery already has been and will continue to be based in Chicago. The Rule 26 conference has occurred in Chicago between Chicago counsel. The Rule 26 exchange of disclosures has taken place in Chicago between Chicago counsel. Chicago counsel for the parties have attended several court hearings. Safe Bed has already filed a motion to compel discovery here in Chicago and it has been granted. Chicago counsel represent all parties and have agreed upon a proposed case management schedule, which was entered by Judge Ashman on May 15, 2002. *CEM Corp. v. Grillo*, No. 5:97-CV614BR2, 1998 U.S. Dist. LEXIS 8082, at *12 (E.D. N.C. Apr. 22, 1998) ("Both parties have obtained competent and capable counsel located near this court," denying transfer motion). Indeed, since counsel for both parties are located in Chicago, maintaining the case in this District eliminates the need for local counsel

7

altogether, greatly reducing the costs of litigation. By contrast, if transferred, the travel expenses of each side's lead Chicago counsel would increase substantially. As stated in a case cited by Defendants:

> Plaintiff contends that the convenience of counsel is not relevant. This Court disagrees. The cost of counsel's transportation and time in route must be borne by the parties. Therefore this factor directly bears upon the convenience of the parties and costs of litigation.

*Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 124-25 n.5 (S.D. Tex. 1971).

Safe Bed has in its possession, custody and/or control more than about one hundred thousand pages of documents that Defendants will likely demand to be produced. To the extent required to be produced, these documents will all be made available in Chicago. Safe Bed's witnesses, party and non-party, are located in this District. The Defendant hospitals are all located within this District. KCI has its regional headquarters here, as well as the accused products and sales representatives. This Court would be best positioned to supervise discovery in the case, as it has already been doing.

In an effort to further minimize any asserted inconvenience, Safe Bed agrees to depose the KCI witnesses where they are located – Safe Bed has already deposed one KCI witness in Texas. To the extent that KCI makes documents available for Safe Bed's inspection, Safe Bed agrees to inspect the documents on site. Thus, any asserted pre-trial inconvenience simply does not exist. As many courts have noted, with modern technology, the location of the documents is no longer an issue. *CoolSavings.com*, 53 F. Supp. 2d at 1006; *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199SLR, 2001 U.S. Dist. LEXIS 20803, at *12 (D. Del. Nov. 28, 2001) ("Regardless of where the trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.")

**C.    The Convenience to the Witnesses Requires that the Case Remain Here**

    **1.    All Safe Bed's Witnesses are in Chicago, Beyond the Subpoena Power of Texas and Many Will Not Voluntarily go to Texas to Testify**

Safe Bed chose this District because it is Safe Bed's home forum, and therefore convenient for it and its witnesses. KCI's home court is extremely inconvenient to Safe Bed, its principals and other witnesses. Safe Bed expects that it may call 15 witnesses, all of whom reside in this District. *See* Ex. 1, Potthast Decl. ¶ 14. These witnesses will testify on inventorship,

8

commercial success, damages, KCI's asserted defenses, and KCI's willful infringement of the '939 patent. *Id.*

For example, Safe Bed intends to call Kevin Morrey, an Illinois resident, to testify on: (1) KCI's knowledge of the '939 patent from at least January 1998; (2) KCI's 1998 creation of an affidavit including untrue statements about the inventorship of the '939 patent for Kevin Morrey to sign, which untrue statements had nothing to do with that lawsuit; and (3) KCI's repeated payments in 1998 to Kevin Morrey to secure his testimony in the *RWM* case and to secure the false statements about inventorship of the '939 patent. Ex. 5, 1996 Morrey Dep. at 50:15-51:12, 53:10-25, 56:3-57:5, 160:8-16; 2001 Morrey Dep. at 50:15-51:12. Thus, more than 4 years ago, KCI was already showing its knowledge of the '939 patent and therefore of its infringement by laying the groundwork for an attack on the '939 patent using testimony from a paid witness. Those efforts took place in this District and relate directly to KCI's willful infringement of the '939 patent. Kevin Morrey will not cooperate with Safe Bed and will not testify at trial unless compelled by subpoena, something that cannot be done from Texas. *See* Ex. 6, Declaration of Catherine L. Gemrich ("Gemrich Decl.") ¶¶ 10-11.

Safe Bed's other non-party witnesses have stated that they will neither cooperate nor go to Texas to testify. *See* Ex. 7(a)-(d), Affidavits of Safe Bed non-party witnesses; Ex. 6, Gemrich Decl. ¶¶ 3-9. Those witnesses are beyond the subpoena power of the Texas court to which KCI seeks transfer. Consequently, the only way that Safe Bed can have these witnesses testify is if Safe Bed can have a court compel them to testify. Only a court in this District can do that. Transferring the case to KCI's home court away from this District would unfairly and unduly prejudice Safe Bed.

### 2. KCI's Witness List is Fabricated for Purposes of its Motion

William Quirk, corporate counsel for KCI, identified 24 alleged potential witnesses who "may be called by KCI to testify at trial." *See* Ex. 2(c), Corrected Quirk Decl. ¶¶ 8-9. KCI asserts that because of the length of its witness list, the case should be transferred to KCI's home court. Now, in connection with discovery, KCI acknowledges that it is unlikely that it would call 24 witnesses at trial and objects to Safe Bed deposing those witnesses. KCI believes that the normal ten depositions allowed by Rule 26 would be sufficient, which includes expert depositions. KCI noted that most of the 24 KCI witnesses <u>were not likely to be relevant</u>, stating:

9

"Defendants do not believe Plaintiff has <u>any basis</u> for extending the number of depositions from 10 to 35...In short, the 24 potential witnesses were listed prior to any narrowing of the issues in the case. Once the issues in the case are, in fact, narrowed, it is <u>highly unlikely that all 24 potential witnesses will be relevant</u>." *See* Ex. 8, Joint Status Report at 4 (emphasis added.)

In a rare and surprising moment of candor, KCI now admits that the Quirk witness list is an overblown fabrication, solely for the purpose of inducing this Court to grant its motion to transfer. This is a subversion of the legal process by KCI and it alone is grounds to deny KCI's motion to transfer.

This is not the first time KCI has done this. For example, in support of its motion to transfer the *RWM* litigation, KCI identified 15 potential witnesses. *RWM Kinetics Enter., Inc. v. Kinetic Concepts, Inc.*, No. 95-C5376, 1996 U.S. Dist. LEXIS 6176, at *9 (N.D. Ill. May 7, 1996). Of those 15, only two (2) actually testified. Moreover, with a deposition limit of ten, as KCI asserts is sufficient, and with four other defendants and at least two expert depositions, plaintiff could only take three depositions from KCI's 24-witness list, assuming it took only one deposition of the other four defendants.

KCI already knows which products are accused in this case. KCI has been aware of and taking defensive actions as to the patent-in-suit since at least January 1998. KCI is well represented by counsel familiar with patents and patent law. It knows <u>now</u>, prior to any "narrowing of the issues" which of its witnesses are likely to be "relevant."

For additional evidence of the unreliability of KCI's witness list, one need only consider the fact that KCI submitted to Safe Bed not one but two "corrected" versions of Quirk's declaration with the witness list. *See* Ex. 2 (Three different versions of Quirk's Declarations). Apparently Mr. Quirk, a long time KCI employee, in his first declaration, did not know whether KCI did any manufacturing. Ex. 2(a), February 12, 2002 Quirk Decl. ¶¶ 5, 13; Ex. 2(b), March 20, 2002 Quirk Decl. ¶ 13. In his final "corrected" declaration, he finally acknowledged what KCI has said in its SEC filings for the last several years, that KCI is the manufacturer of the accused product. Ex. 2(c), Corrected Quirk Decl. ¶ 5. The fact is that KCI, through a person who does not even know if his company is making any product, has fabricated a witness list solely for purposes of its motion to transfer. KCI's witness list should be given no credence, particularly in view of KCI's admission that it is overblown for purposes of its motion to transfer.

Further, party witnesses and witnesses under the control of a party are irrelevant to the "convenience of witnesses" factor. *Applied Web Sys., Inc. v. Catalytic Combustion Corp.*, No. 90-C4411, 1991 U.S. Dist. LEXIS 5696, at *13 (N.D. Ill. Apr. 26, 1991) ("In weighing the relative inconvenience of witnesses, the Court generally assigns little weight to the location of employee-witnesses"). Of those 24 alleged potential witnesses, only 10 are stated as not employed by KCI.

An examination of KCI's "non-employee" witness designations shows many, if not all, of those witnesses are also under its effective control. All but one are former KCI employees, and that one is a paid consultant for KCI. *See* Ex. 3, Quirk Dep. at 63:24-64:10, 65:19-66:3. For example, "non-employee" Jim Leininger may currently not be employed by KCI, based on the corporate restructuring the KCI entities have engaged in for "tax and accounting reasons" (*see* Ex. 2(c), Corrected Quirk Decl. ¶ 5), but he is a <u>founder</u> of the KCI entities, was a long-time Chairman of the Board of the KCI entities and still owns one third of the stock of the related KCI entities, which ultimately own and control KCI. *See* Ex. 9(a); Ex. 3, Quirk Dep. at 66:10-20. He is also one of the 100 richest Texans and part owner of the NBA San Antonio Spurs. *Id.* Similarly, "non-employee" Pete Leininger, the brother of Jim, was the <u>executive vice-president and chief administrative officer</u> of Kinetic Concepts, Inc. *See* Ex. 9(b). "Non-employee" Ray Hannigan was the <u>chief executive officer</u> of Kinetic Concepts, Inc. *See* Ex. 9(c). These people technically may be not currently employed by the defendant KCI, but they clearly are under the control of KCI. Other "non-employee" potential witnesses are former KCI employees or consultants (for example, Gary Kay) and would testify wherever asked by KCI. *See* Ex. 3, Quirk Dep. at 63:24-64:10, 65:19-66:3.

Not surprisingly, in view of their close KCI ties, KCI offers no evidence, not even through the frequently revised Quirk declaration, that these "non-employee" witnesses would be unwilling, unable or even that it would be burdensome for them to travel to Chicago to testify. *See* Ex. 3, Quirk Dep. at 67:18-69:1. *Xerox Corp. v. U.S. Robotics Corp.*, 43 U.S.P.Q. 2D (BNA) 1798, No. 97-CV6182T, 1997 U.S. Dist. LEXIS 16044, at *6 (W.D.N.Y. Jul. 24, 1997) (denying motion to transfer where moving party "failed to identify a single specific witness who would be unable to travel to" the original forum). This fact alone, particularly when compared to the necessary witnesses Safe Bed has shown by affidavit to be unwilling to travel to Texas, requires keeping the case here. Nor does KCI offer any evidence that the testimony of these "non-

11

employees" is relevant, or how it would not be duplicative with testimony from employee witnesses.

The importance of witness testimony is the nature and quality of the testimony and whether the witnesses can be compelled to testify at trial, not the number of potential witnesses. *Imation Corp. v. Sterling Diagnostic Imaging, Inc.*, 47 U.S.P.Q. 2D (BNA) 1745, No. 97-2475, 1998 U.S. Dist. LEXIS 16859, at *11 (D. Minn. Apr. 21, 1998). KCI offers nothing to show the quality of its alleged potential witnesses. Quirk, KCI's designated witness for issues related to KCI's motion to transfer, could not explain the potential substance of a single one of the 24 alleged witnesses' testimony. See Ex. 3, Quirk Dep. at 28:10-31:4, 37:7-23, 41:1-42:6, 47:9-12. Apart from two minor instances, Quirk had not even bothered to speak to any of the alleged 24 witnesses about their potential testimony or their potential relevance. *Id.* The two minor instances are Quirk's commentary about KCI's corporate structure, on which he made false statements in his first two declarations. *Id.* at 30:3-31:4; Ex. 2(a), Quirk Decl. ¶¶ 5, 13; Ex. 2(b), Quirk Decl. ¶ 13. All Quirk did in his original and "corrected" declarations was to list the members of the development team for the accused product, without regard to their actual knowledge about the product or its development. See Ex. 2(a)-(c), Quirk Decls. ¶¶ 8-9; Ex. 3, Quirk Dep. at 35:24-36:16. In fact, the members of the development team for the accused product are unlikely to be useful trial witnesses on relevant issues. What will be useful is the trial testimony of the experts who analyze the structure and operation of the product and compare that structure and operation to the asserted patent claims.

### D. The *RWM Kinetic* Case Relied on by KCI Between Different Parties, Based on a Different Patent and Different Products Does Not Warrant Transferring this Case

Rather than seeking transfer based on the facts of this case, KCI seeks transfer based on the different facts of another lawsuit. Its position is not surprising, since the present facts do not warrant transfer. KCI is wrong to equate the two cases. The *RWM Kinetic* case was a 1995 patent case filed by a different plaintiff against different defendants based on different patents accusing different products. Ex. 1, Potthast Decl. ¶ 11. If KCI believed the cases to be the same, KCI would have filed a motion to dismiss on the grounds of res judicata or issue preclusion, but KCI has filed no such motion and could not file such a motion, because the cases have so little in common.

In the 1995 case, RWM Kinetic Enterprises, Inc. and Tom Ring sued two KCI entities for patent infringement of an RWM patent. KCI says that because Judge Marovich transferred that case, this one should also be transferred. Again, KCI is basically making the argument that the forum in a patent suit should always be the accused infringer's principal place of business. In fact, Judge Marovich found the defendants' transfer motion in the 1995 case to be a very close call. He found the convenience to the parties, the convenience to the witnesses and judicial efficiency all to be a "draw," favoring neither side. *RWM Kinetic Enterprises*, 1996 U.S.Dist. LEXIS 6176, at \*8-\*12. Judge Marovich correctly found that his transfer merely would shift the inconvenience from KCI to the plaintiff in that case: "One side will be inconvenienced regardless of where the case is tried." *Id.* at \*8-\*9. Of course, it is not appropriate to transfer a case when such transfer would only shift the inconvenience from one party to the other. *Dark Horse Trading Co.,* 1999 U.S. Dist. LEXIS 7896, at \*6; *Regent Lighting Corp.*, 933 F. Supp. at 513. Judge Marovich's questionable rationale in transferring the case was that the KCI document production supervision would be easier for a Texas court. That is not the case here, because of the voluminous quantity of documents that are present in this District.

In fact, this case is more like the case in *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212 (D. Kan. 1998), another case where a KCI defendant filed a knee-jerk motion to transfer a patent infringement case to its home court. Plaintiff in that case was much like Safe Bed, a very small company owned by two shareholders who were the inventors of the patent-in-suit. *KCJ Corp. v. Kinetic Concepts, Inc.*, 30 F. Supp. 2d 1319, 1321, n.2 (D. Kan. 1998). They assigned their rights in the patent to KCJ to enforce their rights in the patent. *KCJ Corp.*, 30 F. Supp. at 1321. In that case, the court noted: "transfer to the Western District of Texas is not necessary in the interests of justice or for the convenience of the parties and witnesses. *Transferring the case to Texas would only shift defendants' inconvenience to plaintiff.*" *KCJ Corp.*, 18 F. Supp. 2d at 1216 (emphasis added).

### III.  THE INTERESTS OF JUSTICE FAVOR KEEPING THE CASE HERE

#### A.  Judge Ashman is Familiar with the Issues Raised in this Case

Judicial efficiency strongly weighs in favor of keeping the case here in Chicago. Fortuitously, the case has been referred to Magistrate Judge Ashman for all pretrial proceedings except dispositive motions. Judge Ashman has developed familiarity with important aspects of the present case by virtue of his involvement in a prior case concluded in 2001 in this District by

Safe Bed against another out-of-state hospital bed manufacturer on the same patent-in-suit. *Safe Bed Technologies Co. v. Hill-Rom, Inc.*, No. 00C6077 (N.D. Ill. 2000). *See Regents of the Univ. of Cal. v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (affirming district court's transfer of case to itself where court had familiarity with patent involved in case, finding judicial efficiency was decisive factor because of such familiarity); *CEM Corp.*, 1998 U.S. Dist. LEXIS 8082, at *12 ("Previous actions substantially related to this matter have already been brought and resolved in this district.").

### B. This Case can be Disposed of Quickly in this District Compared to San Antonio, Texas

In addition to Judge Ashman's familiarity with the issues involved in the case, the most recent statistics available regarding court docket status favor this District. The most recent statistics available are from the year 2000, not 1999, as defendants have wrongly asserted twice. Comparing relevant data for the two years shows a clear trend favoring this District over San Antonio:

|  |  | 1999 | 2000 | Trend |
|---|---|---|---|---|
| Filing Per Judgeship | N.D. Illinois | 457 | 432 | Favors Chicago |
|  | W.D. Texas | 703 (934)[1] | 727 (966)[1] |  |
| Months to Disposition | N.D. Illinois | 6.0 | 5.1 | Favors Chicago |
|  | W.D. Texas | 8.2 (10.91)[1] | 8.9 (11.84)[1] |  |
| [1] Numbers in parentheses are adjusted to reflect the statistics if there were only three district judges, as is presently the situation, instead of four as there were in 2000. ||||||

*See* Ex. 10. As can be seen from the above chart, the data and trends are for longer disposition times and heavier caseloads in Texas, and for shorter disposition times and lighter caseloads in Illinois. These trends will likely severely increase in favor of this District with the recent passing of Western District of Texas Judge Garcia. *See* Ex. 11. Judge Garcia was one of the only <u>four</u> regular district court judges in that Division, so now the caseload will be handled by only <u>three</u> judges. *See* Ex. 11. Consequently, the caseload of each of the three remaining judges will increase by 33%. Based on this factor alone, the present case should not be transferred to the Western District of Texas. Although Judge Garcia passed away before KCI filed its papers, KCI failed to address this important fact.

Furthermore, if KCI were truly concerned about having this case proceed promptly, it should have refrained from filing its motion to transfer, which will have taken over six months to brief and rule upon.

14

C.       **The Motion to Sever Should be Denied because Transfer is Not Appropriate**

The standard for determining whether to sever a party from a case is: (1) the severed claims were peripheral to the remaining claims; (2) adjudication of the remaining claims would potentially dispose of the severed claims; and (3) section 1404(a) warrants transfer of the remaining claims. *LG Elec., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584 (D. N.J. 2001). Regardless of whether Defendants are able to establish elements 1 and 2, as discussed above, Section 1404(a) does not warrant transfer of the claims against KCI nor would judicial economy be promoted. Consequently, severance is not appropriate here.

## CONCLUSION

For all of the foregoing reasons, the Motion to Sever and Transfer should be denied.

Respectfully Submitted,

_____
Attorneys for Plaintiff

| | |
|---|---|
| James D. Ryndak | Anthony C. Valiulis |
| Mark K. Suri | John H. Ward |
| RYNDAK & SURI | MUCH SHELIST FREED DENENBERG |
| 30 N. LaSalle St., Suite 2630 | AMENT & RUBENSTEIN PC |
| Chicago, IL 60602 | 200 N. LaSalle St., Suite 2100 |
| 312-214-7770 | Chicago, IL 60601 |
| | 312-346-3100 |

15

## CERTIFICATE OF SERVICE

I, Mark K. Suri, an attorney, certify that the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO SEVER AND TRANSFER** and **NOTICE OF FILING** were served on Defendants by causing a copy to be transmitted to the following persons:

Raymond P. Niro
Robert A. Vitale
Douglas M. Hall
NIRO, SCAVONE, HALLER AND NIRO
181 West Madison Street, Suite 4600
Chicago, IL 60602
Fax: (312) 236-3137

by hand delivery this 28th day of May, 2002.

_____
Mark K. Suri

## LIST OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| Ex. 1 | Declaration of James W. Potthast |
| Ex. 2A | February 12, 2002 Declaration of William Quirk |
| Ex. 2B | March 20, 2002 Declaration of William Quirk |
| Ex. 2C | April 18, 2002 Corrected Declaration of William Quirk |
| Ex. 3 | William Quirk Deposition Transcript Excerpts |
| Ex. 4 | KCI SEC Filings re Annual Revenues and Number of Employees of KCI |
| Ex. 5 | Kevin Morrey Deposition Transcript Excerpts |
| Ex. 6 | Declaration of Catherine L. Gemrich |
| Ex. 7A-D | Affidavits of Potential Safe Bed Witnesses Who Will Not Travel To Texas To Testify |
| Ex. 8 | Joint Status Report, filed on April 18, 2002 |
| Ex. 9A | Public Documents re Jim Leininger |
| Ex. 9B | Public Documents re Pete Leininger |
| Ex. 9C | Public Documents re Ray Harrigan |
| Ex. 10 | Judicial Statistics for N.D. Ill. and W.D. Tex. for 1991 and 2000 |
| Ex. 11 | Report of the January 16, 2002 Death of Judge Garcia of the Western District of Texas |
| Ex. 12A-K | Lexis Cases Cited in Brief |

# See Case File for Exhibits