# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 02 C 97 | **DATE** | 7/30/2002 |
| **CASE TITLE** | Safe Bed Technologies Company vs. KCI USA, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. For the reasons stated, defendants' motion to sever and transfer is denied. The entire case shall remain in Illinois for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 3 1 2002 | |
| | Notified counsel by telephone. | | date docketed | 26 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 7/30/2002 | |
| IS | courtroom deputy's initials | | date mailed notice IS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAFE BED TECHNOLOGIES COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KCI USA, INC.; LOYOLA UNIVERSITY ) <br> HEALTH SYSTEM; RUSH SYSTEM FOR ) <br> HEALTH; SWEDISH COVENANT ) <br> HOSPITAL; and SHERMAN HOSPITAL, ) <br> ) <br> Defendants. ) | Case No. 02 C 97 <br><br> Judge Charles R. Norgle <br><br> Magistrate Judge <br> Martin C. Ashman <br><br> **DOCKETED** <br><br> JUL 3 1 2002 |

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendants' motion to sever claims against Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital, and to transfer the remaining claims against KCI USA, Inc. to the Western District of Texas, San Antonio Division. For the following reasons, Defendants' motion is denied.

### I. Background

Plaintiff Safe Bed Technologies Company is an Illinois corporation with its principal place of business in Chicago. Safe Bed has a single office located in Chicago, and all of Safe Bed's assets are located in Chicago. Safe Bed does not manufacture or sell products; rather it owns patents and, understandably, enforces its rights under them.

At some point in time Safe Bed acquired the rights to U.S. patent number 4,998,939 (the "'939 patent") from James Potthast and Tom Ring through an assignment agreement. The '939

patent relates to a rotational therapy hospital bed. Potthast and Ring, the two shareholders of Safe Bed, are the inventors of the inventions disclosed and claimed in the '939 patent. They conceived the inventions disclosed and claimed in the '939 patent in Chicago and reduced the inventions to practice in Chicago. Potthast and Ring, as patent attorneys, prosecuted the application that matured into the '939 patent. All documents relating to the '939 patent and its prosecution are located in Chicago.

Defendant KCI USA is a Delaware corporation with its principal place of business and corporate headquarters in San Antonio, Texas. KCI USA is the wholly owned subsidiary of Kinetic Concepts, Inc., a Texas corporation. KCI USA designs and manufactures therapeutic beds in San Antonio, Texas. Through service centers located in most of the fifty states, KCI USA distributes, leases, and services its therapeutic beds. Two service centers are located in Illinois—one in Elmhurst and one in Peoria.

Defendants Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital lease therapeutic beds from KCI USA in Illinois. Each of these parties is an Illinois nonprofit corporation with its principal place of business in Illinois. Under contract, KCI USA and Kinetic Concepts are bound to defend and indemnify these parties against patent infringement lawsuits relating to their use of KCI USA's therapeutic beds.

On January 4, 2002, Safe Bed filed suit against Defendants for patent infringement. For relief, Safe Bed sought damages and whatever justice required. On February 12, 2002, Defendants filed their answer to Safe Bed's complaint in which they set forth a counterclaim and

- 2 -

nine affirmative defenses. At the same time, Defendants filed the instant motion. Since then the parties have engaged in limited discovery and have fully briefed the pertinent issues.

## II. Discussion

A district court may transfer a case under 28 U.S.C. § 1404(a) to any other district or division where it might have been brought for the convenience of the parties and witnesses and in the interest of justice. As so defined by the courts, § 1404(a)'s purpose is to avoid "waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). To prevent a plaintiff from thwarting this purpose by joining a defendant whose connection to the case is peripheral and whose connection to an otherwise suitable transferee forum is insufficient to establish personal jurisdiction or venue, courts are authorized to sever the claims against the peripheral defendant, transfer to the transferee forum the claims against the defendant who is directly connected to the case, and stay proceedings against the peripheral defendant. *LG Elecs. Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584 (D.N.J. 2001); *Indianapolis Motor Speedway Corp. v. Polaris Indus.*, No. IP99-1190-C-B/S, 2000 WL 777874, at *2 (S.D. Ind. June 15, 2000); *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 664-65 (E.D. Va. 1998); *Siemens Aktiengesellschaft v. Sonotone Corp.*, 370 F. Supp. 970, 972 (N.D. Ill. 1973). For this to happen, the moving party must demonstrate that the claims to be severed are in fact peripheral to the remaining claims, that adjudication of the remaining claims is potentially dispositive of the severed claims, and that

transfer of the remaining claims is warranted under § 1404(a). *Indianapolis Motor Speedway Corp.*, 2000 WL 777874, at *2.

Here, Safe Bed does not dispute that the claims against Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital are peripheral to the claims against KCI USA and that adjudication of the claims against KCI USA will potentially dispose of all the claims in this case. (Pl.'s Mem. Opp'n Defs.' Mot. Sever at 15.) Both points seem well settled by the courts. KCI USA designs and manufactures the purported infringing product, while Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital merely use KCI USA's product pursuant to lease agreements and are liable to Safe Bed only if KCI USA is deemed to be infringing on Safe Bed's product. Under similar facts, courts have held that the plaintiff's claims against the party who uses the product are peripheral. *See LG Elecs. Inc.*, 138 F. Supp. 2d at 585 (severing claims brought against a reseller of an alleged infringing product); *Indianapolis Motor Speedway Corp.*, 2000 WL 777874, at *2-3 (severing claims brought against a distributor of an alleged infringing product); *Corry*, 16 F. Supp. 2d at 665-66 (same); *Siemens Aktiengesellschaft*, 370 F. Supp. at 972 (same). We find no reason to depart from the reasoning of those courts here.[1] Likewise, we follow the reasoning of the aforementioned courts with respect to whether the resolution of Safe Bed's claims against KCI USA in Texas, KCI USA's proffered forum, will likely dispose of Safe Bed's claims against Loyola University Health System, Rush System for Health, Swedish Covenant

---

[1] The fact that KCI USA is funding the defense to Safe Bed's claims tends to show the peripheral nature of Safe Bed's claims against Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital. *See Corry*, 16 F. Supp. 2d at 666 n.12 (citing to *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 123 (S.D. Tex. 1971)).

Hospital, and Sherman Hospital in Illinois. *See LG Elecs. Inc.*, 138 F. Supp. 2d at 585-86; *Indianapolis Motor Speedway Corp.*, 2000 WL 777874, at *3; *Corry*, 16 F. Supp. 2d at 665-66; *Siemens Aktiengesellschaft*, 370 F. Supp. at 972. On this point, we note that Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital have all agreed to be bound by the decision of the district court in Texas. *See LG Elecs. Inc.*, 138 F. Supp. 2d at 585-86; *Corry*, 16 F. Supp. 2d at 665 n.9.

Moving on, we address the critical question raised by Defendants' motion: whether Safe Bed's claims against KCI USA should be transferred from the Northern District of Illinois to the Western District of Texas under § 1404(a). In this regard, KCI USA bears the burden of showing that Safe Bed's claims against KCI USA could have been brought in the Western District of Texas, and that the Western District of Texas is "clearly more convenient" than the Northern District of Illinois. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986); *CoolSavings.com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1005 (N.D. Ill. 1999); *Easypower Corp. v. ICC Innovative Concepts Corp.*, No. 98 C 3189, 1999 WL 66576, at *5 (N.D. Ill. Feb. 8, 1999); *Abbott Labs. v. Zenith Labs., Inc.*, No. 94 C 6792, 1995 WL 117984, at *3 (N.D. Ill. Mar. 16, 1995); *Applied Web Sys., Inc. v. Catalytic Combustion Corp.*, No. 90 C 4411, 1991 WL 70893, at *3 (N.D. Ill. Apr. 29, 1991); *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989); *Walker v. Carnival Cruise Lines, Inc.*, 681 F. Supp. 470, 477 (N.D. Ill. 1987); Charles Alan Wright et al., Federal Practice and Procedure § 3848, at 383 (2d ed. 1986) (The "various forms of words on the weight to be given plaintiff's choice of forum are an attempt to verbalize the burden that defendant must carry in order to persuade the court that transfer should be granted.").

KCI USA's first hurdle is easily overcome. Safe Bed raises no objection to KCI USA's assertion that the claims against it could have been brought in the Western District of Texas. Venue is proper in the district where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). Given that KCI USA has its principal place of business and corporate headquarters in the Western District of Texas, it is clear that Safe Bed could have filed its claims there.

In comparing the convenience of having a plaintiff's claims litigated in the transferee district versus the transferor district, courts consider a variety of factors. Falling within the "convenience of the parties and witnesses" language of § 1404(a) are the following factors: the location of the plaintiff and defendant, the location of the events giving rise to the claims, the location of key witnesses and the ability of the court in either district to compel their appearance if necessary, the location of key documents and similar sources of proof, and the ability of the plaintiff and defendant to bear the expense and inconvenience of litigating in either district. *CoolSavings.com, Inc.*, 53 F. Supp. 2d at 1005-06; *H.B. Sherman Mfg. v. Rain Bird Nat'l Sales Corp.*, 979 F. Supp. 627, 629-31 (N.D. Ill. 1997); *Applied Web Sys., Inc.*, 1991 WL 70893, at *3-6. Falling within the "interest of justice" language of § 1404(a) are the following factors: the ability of the court in either district to quickly resolve the litigation, the interest in resolving the litigation in either district, and the familiarity of the court in either district with the litigation. *DIRECTV, Inc. v. EQ Stuff, Inc.*, No. CV0200292DDPVBKX, 2002 WL 1448321, at *5 (C.D. Cal. May 8, 2002); *Dark Horse Trading Co. v. Walt Disney Co.*, No. 98 C 5251, 1999 WL 33100013, at *3 (N.D. Ill. May 14, 1999); *Sub-Micron Sys., Inc. v. Sub-Micron Surfacing, Inc.*, No. 93 C 3295, 1993 WL 524273, at *10 (N.D. Ill. Dec. 10, 1993). "The analysis under §

1404(a) is flexible and must be made on the unique facts of each case." *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993). It involves a large degree of subtlety and latitude, and therefore is committed to the sound discretion of the trial judge. *Coffey*, 796 F.2d at 219.

Generally speaking, Safe Bed's connection to Illinois is substantial. In fact, there is no doubt that Illinois is Safe Bed's "home forum." Safe Bed is an Illinois corporation with its principal place of business in Chicago. Safe Bed has no offices or representatives outside of Illinois. *See Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995) (The fact that the plaintiff brings his claims in his home forum weighs against transfer.) Likewise, KCI USA's connection to Texas is substantial. KCI USA has its principal place of business and corporate headquarters in San Antonio, and it designs and manufactures therapeutic beds there. Texas is properly considered KCI USA's base; however, KCI USA is connected to Illinois in an important way through its service centers in Elmhurst and Peoria. KCI USA derives four percent of its total revenue from the commercialization of its therapeutic beds in Illinois. *See Aptargroup, Inc. v. Summit Packaging Sys., Inc.*, No. 94 C 2304, 1994 WL 589540, at *2 (N.D. Ill. Oct. 25, 1994). Overall, this factor favors retention of the litigation between Safe Bed and KCI USA in Illinois.

The events giving rise to Safe Bed's claims against KCI USA have occurred throughout the United States, wherever KCI USA's products have been sold or leased. Chiefly, the events giving rise to Safe Bed's claims against KCI USA have occurred in Texas where KCI USA has been designing and manufacturing its therapeutic beds. *See LG Elecs. Inc.*, 138 F. Supp. 2d at 590 ("The center of gravity of the allegedly infringing activity has occurred [where the product's development, testing, research, and production took place]."). In contrast, the events giving rise to KCI USA's counterclaim and nine affirmative defenses appear to have occurred chiefly in

Illinois—where Potthast and Ring conceived the inventions disclosed and claimed in the '939 patent, and where Potthast and Ring reduced the inventions to practice. Thus, KCI USA's assertion of its counterclaim and nine affirmative defenses reinforces this litigation's connection to Illinois. *See Abbott Labs.*, 1995 WL 117984, at *4; *Aptargroup, Inc.*, 1994 WL 589540, at *2. As to this factor, we have a draw.

In an exhibit, KCI USA lists thirteen employees and ten nonemployees that it anticipates calling as witnesses at trial. (Defs.' Mem. Supp. Mot. Sever Ex. B at 2-4.) All of the potential witnesses reside in Texas. Nine of the potential witnesses have knowledge of "[m]atters pertaining to the design and development of [the therapeutic beds]," two have knowledge of "[m]atters pertaining to the design, development, and manufacture of [the therapeutic beds]," two have knowledge of "[a]ccounting matters pertaining to the development and commercialization of [the therapeutic beds]," six have knowledge of "[m]atters pertaining to the design, development, and commercialization of [the therapeutic beds]," one has knowledge of "[m]atters pertaining to the research, development, and commercialization of [the therapeutic beds]," and three have knowledge of "[m]atters pertaining to executive management of the design and development of [the therapeutic beds]." (*Id.*) This is all good, but KCI USA has failed to inform this Court about the positions these witnesses hold or why so many witnesses are needed to testify on the same topic. Such information would certainly be helpful in assessing the quality and nature of their potential testimony. *See Sub-Micron Sys., Inc.*, 1993 WL 524273, at *9; *Vandeveld*, 877 F. Supp. at 1168; *Rose*, 713 F. Supp. at 1214.

KCI USA presents no specifics on the inconveniences that its potential witnesses would likely experience if they were required to testify at trial in Illinois. Safe Bed has agreed to depose

any KCI USA witness where he or she is located prior to trial. More importantly, KCI USA presents no evidence that a single one of its twenty-three potential witnesses would be unwilling to testify at trial in Illinois if asked. This fact militates against KCI USA's position. *See Sub-Micron Sys., Inc.*, 1993 WL 524273, at *10 ("[S]ince neither party suggests that any of its witnesses are likely to be unwilling to testify, we do not weigh the availability of compulsory process for unwilling witnesses.").

Safe Bed lists Potthast, Ring, and thirteen others as potential witnesses. (Pl.'s Mem. Opp'n Defs.' Mot. Sever Ex. A at 3-5.) All of the potential witnesses reside in Illinois. (*Id.*) Potthast and Ring, as the inventors and prosecutors of the '939 patent, are, of course, critical to this litigation. Of the thirteen other individuals, four are from Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital, and are expected to have information that Safe Bed may use to support its claims and undermine KCI USA's defenses. Seven are expected to have information relevant to "the inventorship" of the '939 patent. One, Jim Ring, is expected to have information relevant to undermining KCI USA's defenses. And finally, the last potential witness, Kevin Morrey, is expected to have information relevant to the inventorship of the '939 patent and the willful nature of KCI USA's infringement.

In its opposition brief, Safe Bed elaborates on the importance of Morrey. Safe Bed claims that it intends to have Morrey testify on KCI USA's knowledge of the '939 patent since January 1998, KCI USA's creation of a 1998 affidavit containing false statements about the inventorship of the '939 patent, and KCI USA's payment of money in 1998 to Morrey to secure his signature on the false affidavit. (Pl.'s Mem. Opp'n Defs.' Mot. Sever at 9.) As a result, the importance of Morrey to Safe Bed's claim of willful infringement is understood. At oral

argument, Safe Bed explained that the phrase "the inventorship of the '939 patent" means "the validity of the '939 patent." Yet it is still not apparent who the seven individuals are, what information they possess, and why seven of them are needed to testify. The importance of obtaining testimony from the unspecified individuals at Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital is also unclear. Users of KCI USA's therapeutic beds are located throughout the United States; presumably, Safe Bed could obtain the information it desires from any of them.

Unlike KCI USA, Safe Bed has produced declarations from four of the thirteen "others" indicating that they are unwilling to travel to Texas to testify. (Pl.'s Mem. Opp'n Defs.' Mot. Sever Exs. 7(A)–(D).) Some of these individuals cite to general financial concerns, while others cite to familial concerns. According to a declaration by Safe Bed's counsel, four more, of which one is Morrey, indicated that they are unwilling to travel to Texas; these four individuals refused to sign declarations indicating the same. (Pl.'s Mem. Opp'n Defs.' Mot. Sever Ex. 6.) It is uncontested that all eight of these individuals are beyond the subpoena power of the district court in Texas. Hence, this case would need to stay in Illinois to obtain their live testimony at trial. *See Applied Web Sys., Inc.*, 1991 WL 70893, at *5 ("[T]he live testimony of material non-party witnesses is preferred.").

Potthast and Ring claim that they will experience significant financial hardship if they are forced to testify in Texas. Potthast is a sole practitioner in Illinois. Ring is a partner at a law firm in Illinois. Each lawyer wants to avoid the burden that traveling to Texas will place on his practice.

The evidence presented on this factor, then, favors Safe Bed's position. KCI USA sets forth no potential witness who is unwilling to testify at trial in Illinois. Safe Bed, in contrast, has provided a list of eight people who refuse to testify in Texas, of which one is Morrey, with whom Safe Bed intends to prove its claim of willful infringement. Admittedly KCI USA's witnesses will be inconvenienced when they travel to Illinois to testify at trial, but so too would Safe Bed's witnesses (not taking into account the unwilling eight) if they were to travel to Texas to testify. Safe Bed's potential witnesses from Loyola University Health System, Rush System for Health, Swedish Covenant Hospital, and Sherman Hospital fall outside the equation for the reasons stated above.

Key documents and similar sources of proof are located in Texas and Illinois. As KCI USA designs and manufactures its therapeutic beds in Texas, and stores virtually all of its information on these subjects in Texas, it is clear that the evidence Safe Bed needs to prove its infringement claim is located there. *See Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. P'ship*, 807 F. Supp. 470, 474 (N.D. Ill. 1992) ("[T]he location of the infringer's principal place of business is often the critical and controlling consideration [on a motion to transfer]."). KCI USA's service centers in Elmhurst and Peoria, it seems, harbor few documents pertinent to Safe Bed's infringement claim. *See S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983) (discounting the importance of evidence located in Illinois where "only some very limited sales activity occurred"). Contrary to Safe Bed's assertion, the fact that KCI USA's therapeutic beds are located in Illinois is unremarkable. (*See* Pl.'s Mem. Opp'n Defs.' Mot. Sever at 5.) We are confident that plenty of KCI USA's therapeutic beds are located in Texas as well.

We agree with Safe Bed that KCI USA's counterclaim and affirmative defenses reinforce this litigation's connection to Illinois. *See Abbott Labs.*, 1995 WL 117984, at *4; *Aptargroup, Inc.*, 1994 WL 589540, at *2. KCI USA raises affirmative defenses of invalidity, inequitable conduct by Potthast and Ring during the prosecution of the '939 patent, laches and equitable estoppel, unclean hands, and implied license. The evidence that KCI USA needs to prove any of these affirmative defenses is located in Illinois where Safe Bed maintains all information relating to the '939 patent. Accordingly, this factor favors neither Safe Bed nor KCI USA; we have a draw.

There is no doubt that KCI USA will sustain additional expenses and inconveniences by having to continue this litigation in Illinois. Similarly there is no doubt that Safe Bed would have to sustain additional expenses and inconveniences if this litigation were transferred to Texas. Either way, someone ends up with the short end of the stick. KCI USA, with over $350 million per year in revenue and nearly 1300 employees, appears capable of continuing this litigation in Illinois. Based on the evidence presented, we assume that Safe Bed could continue this litigation in Texas. Though it portrays itself as "a small Illinois corporation," the size of its checkbook remains unknown. *See WM. Wrigley Jr. Co. v. Computer Integrated Mgmt., Inc.*, No. 90 C 4209, 1990 WL 186047, at *4 (N.D. Ill. Nov. 8, 1990) ("That CIM is smaller than Wrigley, without more, is not a sufficient reason to transfer this case to CIM's preferred district."). As a result, the weighing of this factor ends in a draw.

The first point of contention over the interest of justice factors concerns the congestion of the dockets in the Northern District of Illinois and the Western District of Texas. According to the most recent data, the median time from filing to disposition of a civil case is 5.6 months in

the Northern District of Illinois but 8.1 months in the Western District of Texas. The median time from filing to trial of a civil case, on the other hand, is 13.2 months in the Western District of Texas but 26.3 months in the Northern District of Illinois. Administrative Office of the United States Courts, *Federal Court Management Statistics 2001: District Courts*, http://www.uscourts.gov/cgi-bin/cmsd2001.pl. This suggests that Safe Bed and KCI USA are slightly more likely to have their litigation disposed of earlier in this district but significantly more likely to receive a speedier trial in Texas. *See H.B. Sherman Mfg.*, 979 F. Supp. at 632 (facing the same situation). Overall, this factor points to Texas, to some degree. *See Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991) (giving this factor "some weight").

Texas and Illinois both have an interest in resolving the litigation between Safe Bed and KCI USA, considering that both states presumably want to encourage business and discourage the sale of infringing products within their boundaries. *See Abbott Labs.*, 1995 WL 117984, at *6. Illinois also has an interest in adjudicating this litigation because it involves an alleged injury to a citizen's intellectual property rights. *See CoolSavings.com, Inc.*, 53 F. Supp. 2d at 1106-07; *cf. Ricoh Co.*, 817 F. Supp. at 481, 486-87. Likewise, Texas has an interest in adjudicating this litigation because it involves a citizen's rights. Thus, this factor favors neither party.

Finally, Safe Bed asserts that this litigation should remain in Illinois because this Court has developed familiarity with the '939 patent by conducting a successful settlement conference in *Safe Bed Technologies Co. v. Hill-Rom Co.* Although some general familiarity has been developed, the level of familiarity we have with the '939 patent is insignificant, especially compared to the level of familiarity obtained by the judges in the cases cited by Safe Bed. (*See* Pl.'s Mem. Opp'n Defs.' Mot. Sever at 14 (citing *Regents of the Univ. of Cal. v. Eli Lilly & Co.*,

119 F.3d 1559 (Fed. Cir. 1997), and *CEM Corp. v. Grillo*, No. 5:97-CV-614-BR2, 1998 U.S. Dist. LEXIS 8082 (E.D.N.C. Apr. 22, 1998).) Simply put, the level of familiarity we have with the '939 patent could be easily acquired by another district court and therefore the judicial economy gained by our role in *Safe Bed Technologies Co. v. Hill-Rom Co.* is minimal. This factor favors neither party.

In sum, after considering all of the factors mentioned above, we find that the claims against KCI USA should not be transferred to the Western District of Texas pursuant to § 1404(a), and therefore Defendants' Motion to Sever and Transfer is denied. As a whole, two factors favor keeping Safe Bed's claims against KCI USA in Illinois, five factors favor neither district, and one factor favors transferring the claims to Texas. This is a close case, and under such circumstances Safe Bed's choice of where to bring its claims should not be disturbed. After all, it was KCI USA's burden to prove that the Western District of Texas would be clearly more convenient than the Northern District of Illinois.

We have given much consideration to the analysis of the court in *RWM Kinetics Enterprises, Inc. v. Kinetic Concepts, Inc.*, No. 95 C 5376, 1996 WL 238753 (N.D. Ill. May 7, 1996)—a case involving a similar patent, similar parties, and similar facts. On many points, we agree. With respect to the convenience of the witnesses, this litigation is distinguishable from *RWM Kinetics Enterprises, Inc.* because here the importance of all twenty-three of KCI USA's potential witnesses is not apparent. *Cf. id.* at *3. Moreover, here KCI USA has not alleged that any of its potential witnesses are unwilling to testify at trial in Illinois. *Cf. id.* at *4. Although we agree with the statement relied on by the court in *RWM Kinetics Enterprises, Inc.* that "'[i]ntellectual property infringement suits often focus on the activities of the alleged infringer, its

employees, and its documents,'" and therefore, "'the location of the infringer's principal place of business is often the critical and controlling consideration,'" *id.* (quoting *Habitat Wallpaper & Blinds, Inc.*, 807 F. Supp. at 474), reliance on this statement is misplaced where the alleged infringer has raised affirmative defenses of invalidity, inequitable conduct, laches and equitable estoppel, unclean hands, implied license, etc. In this situation, the location of the patent holder takes on importance equal to the location of the alleged infringer. For the battle is fought on two fronts, instead of one. Lastly, we disagree with the court's conclusion in *RWM Kinetics Enterprises, Inc.* that it would be "easier and more efficient for a San Antonio-based judge to supervise . . . discovery." *Id.* In our opinion, a judge in Illinois could supervise discovery and rule on motions to compel, etc., just as easily as a judge in Texas regardless of whether more or less discoverable information is located in Illinois as compared to Texas. At oral argument, KCI USA's counsel failed to convince us otherwise.

### III. Conclusion

For the reasons stated, Defendants' Motion to Sever and Transfer is denied. The entire case shall remain in Illinois for further proceedings.

**ENTER ORDER:**

*/s/ Martin C. Ashman*

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** July 30, 2002.

Copies have been mailed to:

| | |
|---|---|
| JAMES D. RYNDAK, Esq.<br>MARK K. SURI, Esq.<br>Ryndak & Suri<br>30 North LaSalle Street<br>Suite 2630<br>Chicago, IL  60602<br><br>ANTHONY C. VALIULIS, Esq.<br>JOHN H. WARD, Esq.<br>Much Shelist Freed Denenberg Ament<br> & Rubenstein, P.C.<br>200 North LaSalle Street<br>Suite 2100<br>Chicago, IL  60601<br><br>Attorneys for Plaintiff | RAYMOND P. NIRO, Esq.<br>ROBERT A. VITALE, JR., Esq.<br>DOUGLAS M. HALL, Esq.<br>Niro, Scavone, Haller and Niro<br>181 West Madison Street<br>Suite 4600<br>Chicago, IL  60602<br><br><br><br><br><br><br><br>Attorneys for Defendants |